**FILED**

FEB 0 5 2004

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C

Stephen L. Beaman, L.R. 83.1 Counsel
State Bar No. 6021
Stephen L. Beaman, P.A.
Post Office Box 1907
Wilson, North Carolina 27894-1907
Telephone: (252) 237-9020

Polk, Prober & Raphael, A Law Corporation
P. O. Box 4365
Woodland Hills, California 91365-4365
(818) 227-0100
(818) 227-0101 facsimile
F.036-2786

Attorneys for Secured Creditor

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| In re | ) | Bk. No. 03-01321-ATS |
| | ) | |
| STEPHEN DAVIS and | ) | |
| RHONDA VIRGINIA DAVIS, | ) | |
| | ) | Motion No. |
| Debtors. | ) | |
| —————————————— | ) | CHAPTER 13 |
| | ) | |
| CITIMORTGAGE, INC., its assignees and/or | ) | |
| successors in interest, | ) | MOTION FOR ORDER GRANTING |
| | ) | RELIEF FROM AUTOMATIC STAY |
| Secured Creditor, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STEPHEN DAVIS and | ) | |
| RHONDA VIRGINIA DAVIS; | ) | |
| JOHN F. LOGAN, Trustee, | ) | |
| | ) | |
| Respondents. | ) | |
| —————————————— | ) | |

CitiMortgage, Inc., its assignees and/or successors in interest, ("Secured Creditor"

copy rec. 2/5/04 SG          13

herein) alleges as follows:

1.   That on or about April 11, 2003, the above named Debtors filed their Chapter 13 Petition in Bankruptcy with this Court.

2.   Secured Creditor is the current payee of promissory note dated September 10, 2002 in the principal amount of $94,090.00 ("Note" herein) secured by a first deed of trust of same date ("Trust Deed" herein) upon property generally described as **647 Bullocksville Road, Manson, North Carolina** and legally described as set forth in the attached deed of trust. (Copies are attached hereto as **Exhibit "A"** and made a part hereof, "Property" herein).  Secured Creditor was assigned the beneficial interest in said Trust Deed by an Assignment of Deed of Trust.

3.   Secured Creditor is informed and believes, and, based upon such information and belief, alleges that title to the subject Property is currently vested in the name of Debtors.

4.   Secured Creditor will seek leave of Court to specify any further encumbrances against the subject Property at the time of trial/hearing.

5.   With respect to Secured Creditor's Trust Deed, the following is due and owing:

| | | |
|---|---|---|
| Unpaid Principal Balance: | $ | 93,428.98 |
| Post-Petition Delinquencies | | |
| Monthly Payments from September 2003 through October 2003 at $765.27 | $ | 1,530.54 |
| Late Charges at $30.61 | $ | 61.22 |
| Monthly Payments from November 2003 through January 2004 at $769.27 | $ | 2,307.81 |
| Late Charges at $30.77 | $ | 61.54 |
| Inspection Fees | $ | 63.00 |

| Attorneys' Fees | $ | 500.00 |
| Total Post-Petition Delinquencies | $ | 4,524.11 |

6.    Secured Creditor has elected to initiate foreclosure proceedings on the Property with respect to the subject Trust Deed; however, Secured Creditor is precluded from proceeding to publish the necessary notices and commence said foreclosure action during the pendency of this Bankruptcy.

7.    This Secured Creditor is informed and believes, and based upon such information and belief, alleges that absent this Court's Order allowing this Secured Creditor to proceed with the pending foreclosure, Secured Creditor's security will be significantly jeopardized and/or destroyed.

8.    Based upon the foregoing, Secured Creditor alleges that Secured Creditor is not adequately protected, that the subject Property is not necessary to effectuate Debtor's rehabilitation, and that it would be unfair and inequitable to delay this Secured Creditor in the foreclosure of Secured Creditor's interest.  Secured Creditor urges that this Court issue an Order herein permitting this Secured Creditor to proceed to a Foreclosure Sale of the Property, including necessary action to obtain possession of the Property.

9.    John F. Logan has been appointed by this Court as the Chapter 13 Trustee in this instant Bankruptcy proceeding.  By virtue of his position as Trustee of the estate of Debtor herein, he administers Debtor's Chapter 13 Plan of Reorganization.  To the extent the relief sought herein is granted, Defendant John F. Logan, Trustee, is bound by any such judgment.

10.    This Court has jurisdiction of this action pursuant to the provisions of Title 28 U.S.C. Sections 1334 and 157 and 11 U.S.C. Section 362(d).

WHEREFORE, Secured Creditor prays judgment as follows:

1.) For an Order granting relief from the Automatic Stay, permitting this Secured Creditor to move ahead with foreclosure proceedings under Secured Creditor's Trust Deed, and to sell the subject Property under the terms of said Trust Deed, including necessary action to

obtain possession of the Property.

    2.)  In the alternative, for an Order requiring:

    a)  the Debtor to reinstate and maintain in a current condition all obligations due under all of the trust deeds encumbering the subject Property, including Secured Creditor's Trust Deed, and including tax/insurance obligations, and reimbursement to Secured Creditor of any sums advanced on behalf of Debtor in order to protect Secured Creditor's interest in the subject Property; and

    b)  allowing this Secured Creditor to proceed with a Foreclosure Sale of the Property and obtain possession thereof, upon the failure of Debtor to maintain the above-referenced payments in a current status.

    3.)  For such Order regarding adequate protection of Secured Creditor's interest as this Court deems proper.

    4.)  For attorneys' fees and costs of suit incurred herein.

    5.)  For an Order waiving the 10-day stay described by Bankruptcy Rule 4001(a)(3).

    6.)  For such other relief as this Court deems appropriate.

Dated: 2-3-04

By: _____

STEPHEN L. BEAMAN, ESQUIRE
L.R. 83.1 Counsel
State Bar No. 6021
Stephen L. Beaman, P.A.
P. O. Box 1907
Wilson, North Carolina 27894-1907
(252) 237-9020

POLK, PROBER & RAPHAEL, A LAW CORPORATION
Attorneys for Secured Creditor
P. O. Box 4365
Woodland Hills, California 91365-4365
(818) 227-0100
(818) 227-0101 facsimile
F.036-2786

70477104-2

39192

# NOTE

DAVIS
LOAN NUMBER: 1420931
CASE NUMBER: 381-6592316-703
MIN: 100053900014209311

SEPTEMBER 10, 2002                    HENDERSON                    NORTH CAROLINA
[Date]                               [City]                       [State]

647 BULLOCKSVILLE PARK ROAD MANSON, NC 27553
[Property Address]

## 1.   PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **ALLIED MORTGAGE CAPITAL CORPORATION**

and its successors and assigns.

## 2.   BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
**NINETY-FOUR THOUSAND NINETY AND 00/100**
Dollars (U.S. $ **94,090.00**                 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **SIX AND THREE-FOURTHS**
percent ( **6.750**        %) per year until the full amount of principal has been paid.

## 3.   PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4.   MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the      **1ST**           day of each month beginning on   **NOVEMBER, 2002**              . Any principal and interest remaining on the     **1ST**          day of **OCTOBER, 2032**                    , will be due on that date, which is called the maturity date.

(B) Place

Payment shall be made at   **6110 PINEMONT, SUITE 215 HOUSTON, TX 77092**

or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $   **610.27**        . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.  [Check applicable box]

☐ Graduated Payment Allonge     ☐ Growing Equity Allonge    ☐ Other [Specify]

## 5.   BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month.  Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary.  If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

EXHIBIT    A

6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent ( **4.000** %) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorney's fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

\- BORROWER - STEPHEN DAVIS - DATE -

\- BORROWER - RHONDA VIRGINIA DAVIS - DATE -

Pay to the order of Allied Mortgage Corporation
Without Recourse
Allied Mortgage Capital Corporation
6110 Pinemont, Suite 215
Houston, TX 77092

BY: ALLIED MORTGAGE CAPITAL CORPORATION

SIGNED: ______________________
MICHELLE TAYLOR - SECRETARY

Pay to the order of
Without Recourse

BY: ALLIED Mortgage Corporation

6110 Pinemont, Suite 215
Houston, TX 77016

SIGNED: ______________________
JEANNE L STELL - VICE PRESIDENT

Pay to the order of Allied Mortgage Corporation
Without Recourse
Allied Mortgage Capital Corporation
6110 Pinemont, Suite 215
Houston, TX 77092

BY: ALLIED MORTGAGE CAPITAL CORPORATION

SIGNED: *Michelle Taylor*
          MICHELLE TAYLOR - SECRETARY


Pay to the order of
Without Recourse          CitiMortgage, Inc.

BY: ALLIED Mortgage Corporation

        6110 Pinemont, Suite 215
        Houston, TX 77016

SIGNED: *Jeanne L. Stell*
         JEANNE L. STELL - VICE PRESIDENT

BK967  PG054

**VANCE COUNTY, N. C.**
FILED FOR RECORD

2002 SEP 12 AM 10: 56

CYNTHIA S. ABBOTT
REGISTER OF DEEDS

| A | S-SLNCBK | 0303230 | JOHN&OSE | 11/22/02 |
|---|---|---|---|---|
| | 704771042 | STEPHEN DAVIS | MTG | HOTGOVT |

06082

# DEED OF TRUST

After Recording Return To:
ALLIED MORTGAGE CAPITAL CORPORATION

6110 PINEMONT, SUITE 215
HOUSTON TX 77092

Prepared By:
TRACEY TURNER

[Space Above This Line For Recording Data]

DAVIS
LOAN NUMBER: 1420931
CASE NUMBER: 381-6592316-703 -
MIN: 10005390001420931!
PARCEL NUMBER: TBA

    THIS DEED OF TRUST ("Security Instrument") is made on   **SEPTEMBER 10, 2002**  . The grantor is
**STEPHEN  DAVIS AND RHONDA VIRGINIA DAVIS, HUSBAND AND WIFE**

("Borrower"). The trustee is  **JIM C. HODGE**

("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as
hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and
has an address and telephone number of Post Office Box 2026, Flint, Michigan 48501-2026, telephone (888)679-MERS.
**ALLIED MORTGAGE CAPITAL CORPORATION**

    , which is organized and existing under the laws of
**TEXAS**    , and whose address is   **6110 PINEMONT SUITE 215 HOUSTON, TX**
**77092**    ("Lender"). Borrower owes Lender the principal sum of
**NINETY-FOUR THOUSAND NINETY AND 00/100**
Dollars (U.S. $ **94,090.00** ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
**OCTOBER 1, 2032**    . This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other
sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably
grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described
property located in   **VANCE**        County, North Carolina:
**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**

which has the address of     **647 BULLOCKSVILLE PARK ROAD, MANSON**
                         [Street]                              [City]
North Carolina  **27553**
        [Zip Code]        ("Property Address");

DOCUUNCI  02/07/00
DOCUUNCI.VTX  07/01/2002

Page 1 of 7

FHA North Carolina Deed of Trust

**BK967  PG055**

TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall  pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4.  In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either:  (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary.  Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for excess funds as required by RESPA.  If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument.  If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower.  Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third</u>, to interest due under the Note;

<u>Fourth</u>, to amortization of the principal of the Note; and

<u>Fifth</u>, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies

BK 967    PG 056

and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender;

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either to (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the property and Lenders rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender Determines that any part of the Property is subject to a Lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

## BK 967   PG 057

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

    (i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

    (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within sixty (60) days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to sixty (60) days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

    **10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

    **11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

    **12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the property under the terms of this security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

    **13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail

BK967  PG058

to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property, Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment of additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with applicable law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notice to Borrower and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including , but not limited to, Trustee's fees of _____ % of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

Page 5 of 7                                    FHA North Carolina Deed of Trust

BK967    PG059

If the lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

    **19. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument without charge to Borrower. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs.

    **20. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

    **21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider      ☐ Graduated Payment Rider      ☒ Other(s) [specify]
☐ Planned Unit Development Rider      ☐ Growing Equity Rider      **ATTACH EXHIBIT "A"**
☐ Adjustable Rate Rider

    BY SIGNING UNDER SEAL BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____   9/10/02
- BORROWER - STEPHEN DAVIS - DATE -

_____   9/10/02
- BORROWER - RHONDA VIRGINIA DAVIS - DATE -

BK967   PG060

STATE OF   NORTH CAROLINA

COUNTY OF   VANCE

I, Janice Jones Stroud , a Notary Public of the County of

VANCE , State of North Carolina, do hereby certify that
STEPHEN JAMES AND RHONDA VIRGINIA DAVIS, HUSBAND AND WIFE

personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official stamp or seal this   10TH   day of   SEPTEMBER, 2002

MY COMMISSION EXPIRES: 9/21/12
                                                    Janice Jones Stroud
                                                    Notary Public

STATE OF NORTH CAROLINA, VANCE COUNTY

The foregoing certificate(s) of   Janice Jones Stroud, Notary Public of
   Vance County, N.C.
is (are) certified to be correct.  This instrument and this certificate are duly registered at
the date and time and in the book and page shown on the first page hereof.

CYNTHIA S. ABBOTT, REGISTER OF DEEDS

By: Wednesday F. Thomas
   Deputy/Assistant Register of Deeds

BK 967   PG 061

Legal Description
"Schedule A"

Being all of Lot 14 containing 1.06 acre and Lot 15 containing 1.00 acre according to that survey and plat entitled "Owner Charles M. White III" dated October 9, 1999 and recorded in Plat Book "W", Page 84, Vance County Registry.

BK 967    PG 062

Prepared By: Lori A. Renn

**STATE OF NORTH CAROLINA**
**COUNTY OF VANCE**

**DECLARATION OF INTENT TO AFFIX MANUFACTURED HOME TO REAL**
**PROPERTY** (Pursuant to N.C.G.S. 47-20.7)

The undersigned owners hereby certify and declare as follows:

1. That they are the current owners of the dwelling unit (formerly manufactured home) described as follows:

**YEAR: 2002**           **MAKE: Horton**
**MODEL: CMD**             **SERIAL #:H177437GL&R**

2. That the wheels, axle and tongue have been removed from the dwelling unit.

3. That the dwelling unit has been or will be permanently installed on a parcel of land now owned by the undersigned located in VANCE County, North Carolina, and described as follows:

**Being all of Lot 14 containing 1.06 acre and Lot 15 containing 1.00 acre according to that survey and plat entitled "Owner Charles M. White III" dated October 9, 1999 and recorded in Plat Book "W", Page 84, Vance County Registry.**

4. ___X___ (A) the dwelling unit has never been titled by the Department of Motor Vehicles; or

_____ (B) the title has been surrendered and cancelled by the Department of Motor Vehicles.

5. The dwelling unit has been or will hereafter be listed, assessed, and taxed as real property for ad valorem taxes in the above county (N.C.G.S. 105-273(13)), and all personal property taxes for the unit for prior years, if any, have been paid in full.

BK967    PG063

6. That the undersigned hereby declare that it is their express intention that the dwelling unit be considered and treated as real property for all purposes, and that any conveyance of or encumbrance upon the real property shall include the unit as a permanent improvement thereto. Further, the undersigned shall not subsequently make request for a Certificate of Origin or Title Certificate for said unit. The owners covenant that this Declaration may be relied upon by lenders, purchasers, attorneys certifying title to said property, title insurance companies insuring title to real property (including the unit as a permanent improvement), and others dealing with the owners, their successors and assigns and until an instrument severing the improvement is recorded in the aforesaid registry.

In Witness whereof, the undersigned have set their hand and seal, this the 10th day of September, 2002.

_Stephen Davis_
**STEPHEN DAVIS**

_Rhonda Virginia Davis_
**RHONDA VIRGINIA DAVIS**

**STATE OF NORTH CAROLINA**

**COUNTY OF VANCE**

I, _Janie Jones Stone_, a Notary Public of the County and State aforesaid, certify that Stephen and Rhonda Virginia Davis personally appeared before me this day and acknowledged the due execution of the foregoing instrument. WITNESS my hand and official seal or stamp this the 10th day of _September_, 2002.

_Janie Jones Stone_
Notary Public
My Commission Expires: _9/21/02_



Stephen L. Beaman, L.R. 83.1 Counsel
State Bar No. 6021
Stephen L. Beaman, P.A.
Post Office Box 1907
Wilson, North Carolina 27894-1907
Telephone: (252) 237-9020

Polk, Prober & Raphael, A Law Corporation
P. O. Box 4365
Woodland Hills, California 91365-4365
(818) 227-0100
(818) 227-0101 facsimile
F.036-2786
Attorneys for Secured Creditor

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| In re | ) | Bk. No. 03-01321-ATS |
| | ) | |
| STEPHEN DAVIS and | ) | |
| RHONDA VIRGINIA DAVIS, | ) | |
| | ) | Motion No. |
| Debtor. | ) | |
| | ) | CHAPTER 13 |
| | ) | |
| CITIMORTGAGE, INC., its assignees and/or | ) | |
| successors in interest, | ) | |
| | ) | |
| Secured Creditor, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STEPHEN DAVIS and | ) | |
| RHONDA VIRGINIA DAVIS; | ) | |
| JOHN F. LOGAN, Trustee, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that the motion stated above has been filed simultaneously with the service hereof by the undersigned.

NOTICE IS FURTHER GIVEN that this motion may be allowed provided no

response and request for a hearing is made by the debtor, trustee, or other parties in interest in writing to the Clerk of this Court within 15 days from the date of this notice.

NOTICE IS FURTHER GIVEN that if a response and a request for a hearing is filed by the debtor, trustee, or other parties in interest named herein in writing within the time indicated, a hearing will be conducted on the motion and response thereto at a date, time and place to be later set by this Court and all interested parties will be notified accordingly. If no request for a hearing is timely filed, the Court may rule on the motion and response thereto ex parte without further notice. Any party filing an objection and requesting a hearing will be expected to appear or they may be taxed with Court costs for scheduling the hearing.

## CERTIFICATE OF SERVICE

That I am, and all times hereinafter mentioned was, more than eighteen (18) years of age; and I certify that a copy of the foregoing Motion and Notice of Motion was served on the persons named below, on this date by mailing a copy of said Motion and Notice of Motion to them at their addresses shown below by depositing the same in a postpaid, properly addressed wrapper in a Post Office or other official depository under the exclusive care and custody for the U.S. Postal Service.

This 3rd day of February, 2004.

STEPHEN L. BEAMAN, P.A.

BY: _____
Stephen L. Beaman,
L.R. 83/1 Counsel
State Bar No. 6021
Post Office Box 1907
Wilson, North Carolina 27894-1907
Telephone: (252) 237-9020

SERVED ON:

Stephen Davis
Rhonda Virginia Davis
647 Bullocksville Park Road
Manson, NC 27553
Debtors

John F. Logan, Trustee
PO Box 61039
Raleigh, NC 27661-1039

John T. Orcutt, Esq., Attorney for Debtors
6616 Six Forks Road, Suite 203
Raleigh, NC 27615

# **SPECIAL NOTICE**

## **THE FOLLOWING NOTICE IS GIVEN TO YOU IN THE EVENT THAT THE FEDERAL FAIR DEBT COLLECTIONS ACT APPLIES TO THIS COMMUNICATION.**

The following statement provides you with notice of certain rights which you may have by law. Nothing in this statement modifies or changes the hearing date or response time specified in the attached documents or your need to take legal action to protect your rights in this matter. No provision of the following statement modifies or removes your need to comply with local rules concerning the attached documents.

### **CONSUMER DISCLOSURE**

This communication is made in an attempt to collect on a debt or judgment and any information obtained will be used for that purpose. Please be advised that if you notify CitiMortgage, Inc.'s attorneys in writing within 30 days that all or a part of your obligation or judgment to CitiMortgage, Inc. is disputed, then CitiMortgage, Inc.'s attorneys will mail to you a written verification of the obligations or judgment and the amounts owed to CitiMortgage, Inc. In addition and upon your written request within 30 days, you will be provided with the name and address of the original creditor, if different from the current creditor.