768.0001198        UNITED STATES BANKRUPTCY COURT
                   EASTERN DISTRICT OF NORTH CAROLINA
                         RALEIGH DIVISION

| | |
|---|---|
| IN RE | ) Case No. 03-01321-5-ATS |
| | ) |
| Stephen Davis and | ) Chapter 13 |
| Rhonda Virginia Davis, | ) |
| | ) |
| | ) |
| Debtors. | ) |
| | ) |

---

### MOTION FOR ADEQUATE PROTECTION AND TO MODIFY STAY

Citimortgage, Inc. (hereinafter "Movant"), seeking relief against Stephen Davis and Rhonda Virginia Davis, (hereinafter "Debtors"), moves the Court and respectfully shows as follows:

### PARTIES AND JURISDICTION

1.  Movant is a corporation duly organized and operating under the laws of the State of Maryland, with an office location in Frederick, Maryland. The Debtors are citizens and residents of Wayne County, North Carolina.

2.  The Court has jurisdiction over this proceeding, pursuant to 28 U.S.C. § 1334, and the "Referral Order" entered herein by the Chief United States District Court Judge for the Eastern District of North Carolina. The Court also has jurisdiction over this proceeding, pursuant to 28 U.S.C. §§ 151 and 157(b) in that it is a "core proceeding."

### ALLEGATIONS

3.  On or about September 10, 2002, Debtors executed and delivered to Allied Mortgage Capital Corporation a certain Note in the original sum of $94,090.00. A true copy of said Note is appended hereto, identified as "Exhibit A," and the same is incorporated herein by reference. Also on or about September 10, 2002, Debtors executed and delivered to Allied Mortgage Capital Corporation a certain Deed of Trust, thereby granting Allied Mortgage Capital Corporation a lien or encumbrance on the real property as described therein and known as 647 Bullocksville Park Road, Manson, NC 27533 (hereinafter "real property"). A true copy of said Deed of Trust is appended hereto, identified as "Exhibit B," and the same is incorporated herein by reference. On September 12, 2002, the foregoing Deed of Trust was properly filed with the Register of Deeds of Vance County, North Carolina. Movant is the current owner and holder of the Note and Deed of Trust.

4.  On or about April 11, 2003, the Debtors filed a petition under Chapter 13 of the United States Bankruptcy Code. The Debtors have defaulted under the payment provisions of the foregoing Note, Deed of Trust and Chapter 13 bankruptcy plan. After applying all funds received through March 5, 2008, the Debtors are due for the January, 2008 and subsequent monthly post-petition payments and late charges, to Movant in the total sum of $2,339.30. A ledger showing all post-petition account activity since the bankruptcy filing, is appended hereto identified as "Exhibit C," and the same is incorporated herein by reference.

5. As of March 5, 2008, the principal amount due on said Note was $88,099.91, exclusive of past-due interest, escrow advances, late charges, etc. Upon information and belief, the fair market value of the foregoing real property is approximately $95,000.00, which is the value as shown on the Debtors' Petition and Schedules.

6. If Movant is not permitted to foreclose its lien or encumbrance on the Debtors' real property, Movant will suffer irreparable injury, loss and damage. Movant hereby gives notice that it may submit a declaration or affidavit regarding any issue(s) raised in this contested matter in accordance with Rules 803(6), 902(11), and 902(12) of the Federal Rules of Evidence.

WHEREFORE, Movant prays the Court as follows:

1. That the Court grant Movant adequate protection of its interest, pursuant to 11 U.S.C. §§ 361 and 363 or, in the alternative, that the automatic stay provisions of 11 U.S.C. § 362 be modified or terminated so that Movant any Trustee or Substitute Trustee may foreclose on the real property as shown herein and otherwise enforce its rights in the real property as permitted by North Carolina law and the Deed of Trust;

2. That the preliminary hearing and the final hearing be consolidated into one;

3. That the court waive the ten (10) day waiting period imposed by F.R.B.P. 4001(a)(3) and order that the automatic stay is immediately terminated;

4. That Movant be allowed its reasonable attorneys' fees to the extent allowed under 11 U.S.C. § 506(b); and

5. That Movant have such other and further relief as to the Court may deem just and proper.

Dated: March 5, 2008

        KELLAM & PETTIT, P.A.
        Attorneys for Citimortgage, Inc.

By: _____
Matthew T. McKee
NC Bar No.: 28675
2701 Coltsgate Road, Suite 300
Charlotte, N.C. 28211
Telephone: (704) 442-9500
Fax: (704) 442-8453
Email: notices@kellampettit.com

# NOTE

DAVIS
LOAN NUMBER:
CASE NUMBER: 381-6592316-703
MIN: 100053900014209311

SEPTEMBER 10, 2002     HENDERSON     NORTH CAROLINA
[Date]     [City]     [State]

647 BULLOCKSVILLE PARK ROAD MANSON, NC 27553

[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means ALLIED MORTGAGE CAPITAL CORPORATION

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
NINETY-FOUR THOUSAND NINETY AND 00/100
Dollars (U.S. $ 94,090.00     ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of    SIX AND THREE-FOURTHS percent ( 6.750 %) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the    1ST    day of each month beginning on    NOVEMBER, 2002    . Any principal and interest remaining on the    1ST    day of OCTOBER, 2032    , will be due on that date, which is called the maturity date.

(B) Place

Payment shall be made at    6110 PINEMONT, SUITE 215 HOUSTON, TX 77092

or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $    610.27    . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge     ☐ Growing Equity Allonge     ☐ Other [Specify]

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.



EXHIBIT A

6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent ( **4.000** %) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorney's fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_/s/ Stephen Davis_
- BORROWER - STEPHEN DAVIS - DATE -

_/s/ Rhonda Virginia Davis_
- BORROWER - RHONDA VIRGINIA DAVIS - DATE -

BK 967    PG 054

| | |
|---|---|
| | VANCE COUNTY, N.C.<br>FILED FOR RECORD<br><br>2002 SEP 12  AM 10: 56<br><br>CYNTHIA S. ABBOTT<br>REGISTER OF DEEDS |

9 S-SLNCBK   0593239   JOHNSOSE   11/22/02
A  704771042   STEPHEN DAVIS   MTG   HOTGOVT



06082

# DEED OF TRUST

After Recording Return To:
ALLIED MORTGAGE CAPITAL CORPORATION

6110 PINEMONT, SUITE 215
HOUSTON TX 77092

Prepared By:
TRACEY TURNER

[Space Above This Line For Recording Data]

DAVIS
LOAN NUMBER: ███████
CASE NUMBER: 381-6592316-703 -
MIN: 1000539000142093 11
PARCEL NUMBER:  TBA

THIS DEED OF TRUST ("Security Instrument") is made on SEPTEMBER 10, 2002 . The grantor is
STEPHEN DAVIS AND RHONDA VIRGINIA DAVIS, HUSBAND AND WIFE

("Borrower"). The trustee is JIM C. HODGE

("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of Post Office Box 2026, Flint, Michigan 48501-2026, telephone (888)679-MERS.
ALLIED MORTGAGE CAPITAL CORPORATION
, which is organized and existing under the laws of
TEXAS                                    , and whose address is   6110 PINEMONT SUITE 215 HOUSTON, TX
77092                                                              ("Lender"). Borrower owes Lender the principal sum of
NINETY-FOUR THOUSAND NINETY AND 00/100
Dollars (U.S. $ 94,090.00   ).  This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
OCTOBER 1, 2032              . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in   VANCE                     County, North Carolina:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

which has the address of    647 BULLOCKSVILLE PARK ROAD, MANSON                    [City]
                             [Street]
North Carolina   27553                    ("Property Address");
                 [Zip Code]

DOCUUNC1  02/07/00
DOCUUNC1.VTX  07/01/2002

Page 1 of 7

FHA North Carolina Deed of Trust



EXHIBIT B

TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies

and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the property and Lenders rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender Determines that any part of the Property is subject to a Lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
  (i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
  (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
  (i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
  (ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within sixty (60) days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to sixty (60) days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the property under the terms of this security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail

to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property, Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment of additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with applicable law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notice to Borrower and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of _____ % of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

If the lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq*.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument without charge to Borrower. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs.

**20. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider  ☐ Graduated Payment Rider  ☒ Other(s) [specify]
☐ Planned Unit Development Rider  ☐ Growing Equity Rider  **ATTACH EXHIBIT "A"**
☐ Adjustable Rate Rider

BY SIGNING UNDER SEAL BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_Stephen Davis_   9/10/02
- BORROWER - STEPHEN DAVIS - DATE -

_Rhonda Virginia Davis_   9/10/02
- BORROWER - RHONDA VIRGINIA DAVIS - DATE

BK 967   PG 060

STATE OF   NORTH CAROLINA
COUNTY OF   VANCE

I, Janice Jones Stroud _____, a Notary Public of the County of

VANCE _____, State of North Carolina, do hereby certify that
STEPHEN JONES AND RHONDA VIRGINIA DAVIS, HUSBAND AND WIFE

personally appeared before me this day and acknowledged the due execution of the foregoing instrument.
Witness my hand and official stamp or seal this   10TH   day of   SEPTEMBER, 2002

MY COMMISSION EXPIRES: 9/21/12

_____
Notary Public

STATE OF NORTH CAROLINA, VANCE COUNTY
The foregoing certificate(s) of __Janice Jones Stroud, Notary Public of Vance County, N.C._____
is (are) certified to be correct. This instrument and this certificate are duly registered at the date and time and in the book and page shown on the first page hereof.
CYNTHIA S. ABBOTT, REGISTER OF DEEDS
By: _____
Deputy/Assistant Register of Deeds

DOCUUNC7   02/07/00
DOCUUNC7.VTX   07/01/2002

Page 7 of 7

FHA North Carolina Deed of Trust



Case 03-01321-5-ATS    Doc 35    Filed 03/05/08    Entered 03/05/08 15:25:26    Page 13 of 20

BK 967    PG 061

Legal Description
"Schedule A"

Being all of Lot 14 containing 1.06 acre and Lot 15 containing 1.00 acre according to that survey and plat entitled "Owner Charles M. White III" dated October 9, 1999 and recorded in Plat Book "W", Page 84, Vance County Registry.

Prepared By: Lori A. Renn

**STATE OF NORTH CAROLINA**
**COUNTY OF VANCE**

**DECLARATION OF INTENT TO AFFIX MANUFACTURED HOME TO REAL PROPERTY** (Pursuant to N.C.G.S. 47-20.7)

The undersigned owners hereby certify and declare as follows:

1. That they are the current owners of the dwelling unit (formerly manufactured home) described as follows:

    **YEAR: 2002**         **MAKE: Horton**
    **MODEL: CMD**         **SERIAL #:H177437GL&R**

2. That the wheels, axle and tongue have been removed from the dwelling unit.

3. That the dwelling unit has been or will be permanently installed on a parcel of land now owned by the undersigned located in **VANCE** County, North Carolina, and described as follows:

**Being all of Lot 14 containing 1.06 acre and Lot 15 containing 1.00 acre according to that survey and plat entitled "Owner Charles M. White III" dated October 9, 1999 and recorded in Plat Book "W", Page 84, Vance County Registry.**

4. __X__ (A) the dwelling unit has never been titled by the Department of Motor Vehicles; **or**

   _____ (B) the title has been surrendered and cancelled by the Department of Motor Vehicles.

5. The dwelling unit has been or will hereafter be listed, assessed, and taxed as real property for ad valorem taxes in the above county (N.C.G.S. 105-273(13)), and all personal property taxes for the unit for prior years, if any, have been paid in full.

6. That the undersigned hereby declare that it is their express intention that the dwelling unit be considered and treated as real property for all purposes, and that any conveyance of or encumbrance upon the real property shall include the unit as a permanent improvement thereto. Further, the undersigned shall not subsequently make request for a Certificate of Origin or Title Certificate for said unit. The owners covenant that this Declaration may be relied upon by lenders, purchasers, attorneys certifying title to said property, title insurance companies insuring title to real property (including the unit as a permanent improvement), and others dealing with the owners, their successors and assigns and until an instrument severing the improvement is recorded in the aforesaid registry.

In Witness whereof, the undersigned have set their hand and seal, this the 10th day of September, 2002.

_____
STEPHEN DAVIS

_____
RHONDA VIRGINIA DAVIS


**STATE OF NORTH CAROLINA**

**COUNTY OF VANCE**

I, _____, a Notary Public of the County and State aforesaid, certify that Stephen and Rhonda Virginia Davis personally appeared before me this day and acknowledged the due execution of the foregoing instrument. WITNESS my hand and official seal or stamp this the 10th day of September, 2002.

_____
Notary Public
My Commission Expires: 9/21/02



PAYMENTS RECEIVED

```
Creditor:       CitiMortgage, Inc.
Debtors:        Stephen Davis and Rhonda Virginia Davis
Case No.:       03-01321-5-ATS
Loan No.:       704771042
Our File No.:   7830-N-2999
Collateral:     647 Bullocksville Park Road
                Manson, North Carolina 27553
```

Loan status as of March 1, 2008

On-going mortgage payments scheduled to be paid beginning February 1, 2004 by Debtors

| DATE RECEIVED | AMOUNT RECEIVED | DUE DATE | AMOUNT DUE | MISC FEES PAID | PAID OVER / (SHORT) |
|---|---|---|---|---|---|
| March 3, 2004 | $1,439.96 | February 1, 2004 | $769.27 | ($0.00) | $670.69 |
| March 18, 2004 | $1,439.96 | March 1, 2004 | $769.27 | ($0.00) | $670.69 |
| March 27, 2004 | ($0.00) | | ($0.00) | $4,024.11 | ($4,024.11) |
| April 9, 2004 | $1,439.96 | April 1, 2004 | $769.27 | ($0.00) | $670.69 |
| May 12, 2004 | $1,439.96 | May 1, 2004 | $769.27 | ($0.00) | $670.69 |
| June 4, 2004 | $1,439.96 | June 1, 2004 | $769.27 | ($0.00) | $670.69 |
| July 12, 2004 | $1,439.96 | July 1, 2004 | $769.27 | ($0.00) | $670.69 |
| August 9, 2004 | $769.27 | August 1, 2004 | $769.27 | ($0.00) | ($0.00) |
| September 4, 2004 | $769.27 | September 1, 2004 | $769.27 | ($0.00) | ($0.00) |
| October 11, 2004 | $769.27 | October 1, 2004 | $769.27 | ($0.00) | ($0.00) |
| November 9, 2004 | $774.43 | November 1, 2004 | $774.43 | ($0.00) | ($0.00) |
| December 13, 2004 | $774.43 | December 1, 2004 | $774.43 | ($0.00) | ($0.00) |
| January 11, 2005 | $774.43 | January 1, 2005 | $774.43 | ($0.00) | ($0.00) |
| February 10, 2005 | $774.43 | February 1, 2005 | $774.43 | ($0.00) | ($0.00) |
| March 12, 2005 | $774.43 | March 1, 2005 | $774.43 | ($0.00) | ($0.00) |
| April 19, 2005 | $774.43 | April 1, 2005 | $774.43 | ($0.00) | ($0.00) |
| May 6, 2005 | $774.43 | May 1, 2005 | $774.43 | ($0.00) | ($0.00) |
| June 10, 2005 | $774.43 | June 1, 2005 | $774.43 | ($0.00) | ($0.00) |
| July 13, 2005 | $774.43 | July 1, 2005 | $774.43 | ($0.00) | ($0.00) |
| August 15, 2005 | $774.43 | August 1, 2005 | $774.43 | ($0.00) | ($0.00) |
| September 9, 2005 | $774.43 | September 1, 2005 | $774.43 | ($0.00) | ($0.00) |
| October 10, 2005 | $774.43 | October 1, 2005 | $774.43 | ($0.00) | ($0.00) |
| November 12, 2005 | $775.52 | November 1, 2005 | $775.52 | ($0.00) | ($0.00) |
| December 6, 2005 | $775.52 | December 1, 2005 | $775.52 | ($0.00) | ($0.00) |
| January 3, 2006 | $775.52 | January 1, 2006 | $775.52 | ($0.00) | ($0.00) |
| February 12, 2006 | $775.52 | February 1, 2006 | $775.52 | ($0.00) | ($0.00) |
| March 12, 2006 | $775.52 | March 1, 2006 | $775.52 | ($0.00) | ($0.00) |
| April 10, 2006 | $775.52 | April 1, 2006 | $775.52 | ($0.00) | ($0.00) |
| May 10, 2006 | $775.52 | May 1, 2006 | $775.52 | ($0.00) | ($0.00) |
| June 10, 2006 | $775.52 | June 1, 2006 | $775.52 | ($0.00) | ($0.00) |
| July 12, 2006 | $775.52 | July 1, 2006 | $775.52 | ($0.00) | ($0.00) |
| August 10, 2006 | $775.52 | August 1, 2006 | $775.52 | ($0.00) | ($0.00) |
| September 12, 2006 | $775.52 | September 1, 2006 | $775.52 | ($0.00) | ($0.00) |
| October 9, 2006 | $775.52 | October 1, 2006 | $775.52 | ($0.00) | ($0.00) |
| November 6, 2006 | $781.69 | November 1, 2006 | $781.69 | ($0.00) | ($0.00) |
| December 5, 2006 | $781.69 | December 1, 2006 | $781.69 | ($0.00) | ($0.00) |
| January 15, 2007 | $781.69 | January 1, 2007 | $781.69 | ($0.00) | ($0.00) |
| February 9, 2007 | $781.69 | February 1, 2007 | $781.69 | ($0.00) | ($0.00) |
| March 8, 2007 | $781.69 | March 1, 2007 | $781.69 | ($0.00) | ($0.00) |
| April 6, 2007 | $781.69 | April 1, 2007 | $781.69 | ($0.00) | ($0.00) |
| May 3, 2007 | $781.69 | May 1, 2007 | $781.69 | ($0.00) | ($0.00) |
| May 28, 2007 | $781.69 | | ($0.00) | ($0.00) | $781.69 |
| June 30, 2007 | ($0.00) | June 1, 2007 | $781.69 | ($0.00) | ($781.69) |
| July 9, 2007 | $781.69 | July 1, 2007 | $781.69 | ($0.00) | ($0.00) |
| August 7, 2007 | $781.69 | August 1, 2007 | $781.69 | ($0.00) | ($0.00) |
| September 30, 2007 | ($0.00) | September 1, 2007 | $781.69 | ($0.00) | ($781.69) |
| October 14, 2007 | $781.69 | October 1, 2007 | $781.69 | ($0.00) | ($0.00) |
| November 6, 2007 | $784.56 | November 1, 2007 | $784.56 | ($0.00) | ($0.00) |
| December 31, 2007 | $784.56 | December 1, 2007 | $784.56 | ($0.00) | ($0.00) |
| January 27, 2008 | $784.56 | January 1, 2008 | $784.56 | ($0.00) | ($0.00) |
| February 29, 2008 | ($0.00) | February 1, 2008 | $784.56 | ($0.00) | ($784.56) |
| March 1, 2008 | ($0.00) | March 1, 2008 | $784.56 | ($0.00) | ($784.56) |
| TOTALS | $40,499.24 | | $38,825.91 | $4,024.11 | ($2,350.78) |

PAYLOG



EXHIBIT C

1

768.0001198

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | | |
|---|---|---|
| IN RE | ) | Case No. 03-01321-5-ATS |
| | ) | |
| Stephen Davis and | ) | Chapter 13 |
| Rhonda Virginia Davis, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

## NOTICE OF MOTION

Citimortgage, Inc. has filed papers with the Court seeking relief from the automatic stay to foreclose on your real property in the above-captioned matter (i.e., a Motion for Adequate Protection and to Modify Stay).

<u>Your rights may be affected.</u> You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (if you do not have an attorney, you may wish to consult one.)

If you do not want the Court to grant the relief sought in the motion, or if you want the Court to consider your views on the motion, then on or before <u>March 26, 2008</u>, you or your attorney must file with the Court, pursuant to Local Rule 9013-1 and 9014-1, a written response, an answer explaining your position, and request for a hearing at:

Clerk, U.S. Bankruptcy Court
P.O. Box 1441
Raleigh, NC 27602

If you mail your request/response to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above.

You must also mail a copy to the Movant's Attorney, Debtor(s), Debtor(s) Attorney, Trustee, Bankruptcy Administrator, and other parties in interest.

If a response and a request for hearing is filed in writing on or before the date set above, a hearing will be conducted on the Motion at a date, time and place to be later set and all parties will be notified accordingly.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an Order granting that relief.

Date:   March 5, 2008

KELLAM & PETTIT, P.A.
Attorneys for Citimortgage, Inc.

By: _____
Matthew T. McKee
NC Bar No.: 28675
2701 Coltsgate Road, Suite 300
Charlotte, N.C. 28211

768.0001198

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE<br><br>Stephen Davis and<br>Rhonda Virginia Davis,<br><br>      Debtors. | ) Case No. 03-01321-5-ATS<br>)<br>) Chapter 13<br>)<br>)<br>)<br>) |

### CERTIFICATE OF SERVICE

  I, as attorney of record for Citimortgage, Inc., hereby certify that on the 5th day of March, 2008, I served a copy of the Motion for Adequate Protection and to Modify Stay and Notice of Motion by depositing the same, enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service, said envelope being addressed as follows:

Stephen Davis             Debtors
Rhonda Virginia Davis
647 Bullocksville Park Road
Manson, NC 27533

John T. Orcutt, Esq.           Attorney for the Debtors
6616-203 Six Forks Road
Raleigh, NC 27615

John F. Logan, Esq.           Trustee
P.O. Box 61039
Raleigh, NC 27661-1039


            KELLAM & PETTIT, P.A.
            Attorneys for Citimortgage, Inc.

            By: _____
            Matthew T. McKee
            NC Bar No.: 28675
            2701 Coltsgate Road, Suite 300
            Charlotte, N.C. 28211
            Telephone: (704) 442-9500